## SAMUEL J. KIDSON *vs.* CITY OF BANGOR.

### Penobscot.    Opinion July 9, 1904.

*Drains and Sewers.* Laying out. Maintenance and Repair. Overflow. Deviation
in construction from formal laying out. *Evidence. Municipal officers,*
judicial action by. *Record,* Evidence dehors not admitted. *Special
Assessments,* for sewers. *City of Bangor. R. S.
1903, c. 21, § 18.    Stat. 1850, c. 153, § 1.
Priv. & Spec. Laws 1887, c. 242, § 3.*

In order to recover against a municipality for violation of R. S., c. 21, § 18,
requiring proper maintenance and repair of public drains and sewers, the
plaintiff must establish the following propositions:

1st.  That the drain in question was a public drain or sewer, one legally
established by act of the municipal officers of the city.

2nd.  That the plaintiff was a person entitled to drainage through it, not a
mere trespasser, but one who had fulfilled the requirements of law which
were conditions precedent to the enjoyment of the right of drainage.

3rd.  That the defendant had failed to maintain the sewer, or to keep it in
repair, so as to afford sufficient and suitable flow for all drainage entitled
to pass through it.  And on this point, it must be shown that the defect
was not in the original system established by the judicial act of the munic-
ipal officers, but that there was an actual failure on the part of the city to
maintain and keep the drain in repair after its construction.

4th.  That the plaintiff suffered injury from this neglect of the city to prop-
erly repair and maintain the sewer.

Judicial acts of such boards as county commissioners or municipal officers,
which might result in taking private property for public use, must be done
with due formality and entered of record.

Presumptively the record of such judicial action by the board of municipal
officers shows the full proceedings.  Parol evidence cannot supply, extend
or modify the record.

The board of municipal officers of the City of Bangor passed an order July
13, 1889, instructing the superintendent of sewers to cause a public sewer
to be constructed in Hammond Street to Pier Street westerly to the lot of
one Thompson.  No record appears showing any petition to, or precedent
action by, the municipal officers for any sewer to be constructed on

Wing Street, the location of the drain into which the plaintiff subsequently entered. There was evidence tending to show that in constructing the sewer it was found convenient, owing to a ledge in Hammond Street to deviate from the proposed authorized location and take a more practicable one passing through a portion of Wing Street and past the premises of the plaintiff. There appears no recorded action of the municipal officers authorizing this change. The mayor was allowed to testify that an order was formally passed by the municipal officers directing the construction of the sewer on Wing Street. *Held;* that this testimony should have been excluded.

Since municipal officers in laying out drains and sewers act judicially under authority from the State, they are in no sense the agents of the city.

The city or its agents in charge of the maintenance and repairs of a drain or sewer after its completion are not in a legal sense continuing the same work commenced by the municipal officers in laying it out. They are accountable to different authorities and no privity exists between them.

There can be no subsequent ratification of a deviation from the original laying out of a sewer in cases where the original proceedings for the same must be in pursuance of statutory requirements. Hence, the recorded action of the municipal officers in accepting the report of the superintendent of sewers showing the completion of the sewer and assessing the benefits accruing to the plaintiff from its construction, cannot be received in evidence to prove ratification of acts otherwise unauthorized.

Subsequent ratification or acquiescence by the city, even to the extent of accepting payment of the assessment levied on the plaintiff's premises for sewer purposes, cannot cure a substantial defect or omission in the action of the board of municipal officers in laying out a sewer.

The presentation to the board of municipal officers of a petition signed as required by statute, is a jurisdictional fact which must be made to appear in order to show a proper and legal laying out of a sewer.

*Held;* that the provisions of Spec. Laws of 1887, c. 242, § 3, relating to the entry of private drains into common sewers in the City of Bangor, have reference to such public drains and sewers as are established and constructed by the direction and in accordance with the formal laying out of the board of municipal officers; and that no subsequent ratification or acquiescence by the city can cure a substantial defect or omission in the action of the board.

*Held; also,* that this special law cannot give the plaintiff any greater or different rights from those accorded by the general laws governing drains and sewers.

Motion and exceptions by defendant.    Sustained.

Case to recover damages for alleged violation by defendant of the duty imposed on cities and towns by R. S., c. 21, § 18, to maintain and keep public drains and sewers in repair.

The plaintiff had entered a private drain from his premises at the corner of Wing Street and West Broadway, in the City of Bangor, into what he claimed to be a public drain or common sewer.

It appeared in evidence that the plaintiff paid to the City of Bangor, March 25, 1896, "for assessment for sewerage" on the premises alleged to have been damaged, $31.55. It was also in evidence that the superintendent of sewers of the city directed the plaintiff to enter his private drain with the sewer in question, which was done under his direction and to his satisfaction. It appeared by the records in evidence that the reports of the superintendent of sewers and the sewer board reporting the actual construction of the sewer in question through Wing Street instead of "in Hammond Street from Pier St. westerly to the lot of Fred L. Thompson" as originally and formally laid out, and assessing the property benefited, were considered by the municipal officers and the following records were appended to said reports: —

> "In Board of Municipal Officers
> Nov. 7, 1894.
>
> Report accepted, assessments established & ordered that hearing be granted all persons assessed at the Aldermens' room Dec. 19, next, at 7.30, P. M.
>
> Victor Brett, City Clerk."

> "In Board of M. Officers Dec. 26, 1894.
>
> Finally revised and amended by fixing all assessments at $31.55 each, and by abating assessment on lot No. 13 to J. A. Boardman, & als. amended finally established.
>
> Victor Brett, City Clerk."

The plea was the general issue. The jury found a verdict for plaintiff in the sum of $318.33.

*A. L. Blanchard*, for plaintiff.

If the court should determine that the jury erred in their finding of the facts on this point, the plaintiff still contends that the city has ratified the acts of its agents, in the construction of the sewer on

Wing Street, by levying a sewer tax upon the property of the abutting owners, and accepting the amount of the assessment against the abutting owners and giving receipts therefor. Subsequent adoption and ratification is equivalent to original authority given. 1 Addison on Contracts, p. 108; *Partridge* v. *White,* 59 Maine, 564; *Combs* v. *Scott,* 12 Allen, 493; *Odiorne* v. *Maxcy,* 13 Mass. 178; *Pratt* v. *Putnam,* 13 Mass. 362; *Tucker* v. *Jerris,* 75 Maine, 188; Vol. 1 Am. & Eng. Ency. of Law, 1196; *Hastings* v. *Bangor House,* 18 Maine, 436; *Bryant* v. *Moore,* 26 Maine, 84, 45 Am. Dec. 96; Mechem on Agency, chap. 5, § 113.

Ratification may frequently be inferred from acquiescence or knowledge of all the material facts, or from acts inconsistent with any other suppositions. The same rule is applied to corporations as to individuals.

Dillon on Municipal Corporations, 4th ed., p. 539; *Lincoln* v. *Stockton,* 75 Maine, 146; *Otis* v. *Stockton,* 76 Maine, 506; *Pierce* v. *Greenfield,* 96 Maine, 350; Mechem on Agency, chap. 5, § 118; *Salem* v. *Gloucester Bank,* 17 Mass. 1, 9 Am. Dec. 111; *Baker* v. *Cotter,* 45 Maine, 236; *School District* v. *Ætna Ins. Co.,* 62 Maine, 339; *Davis* v. *School District No. 2, in Bradford,* 24 Maine, 349; Vol. 1, Addison on Contracts, Morgan's ed. p. 109.

If the principal appropriates the proceeds of the trespass, ratification is properly implied. *Exum* v. *Brister,* 35 Miss. 391; *Sceery* v. *Springfield,* 112 Mass. 514.

The statute under which this action is brought was undoubtedly passed for the benefit of the property owners along the line of sewer, as it granted to them a privilege to enter the sewer under conditions which were not conferred upon them by general statute. The abutting owner could insist on a written permit to enter the sewer and the city would be obliged to grant the permit. The abutting owner could waive the written permit on being assured that they could make the entry without it. The city, by allowing the entry to be made without issuing a written permit, would not waive any of its statutory rights as it might properly do. The plaintiff could waive any or all of the formalities and have his rights protected.

*T. D. Bailey, City Solicitor,* for defendant.

SITTING: WISWELL, C. J., STROUT, SAVAGE, POWERS, PEABODY, SPEAR, JJ.

PEABODY, J.   The plaintiff commenced an action on the case against the City of Bangor to recover damages alleged to have resulted from the overflowing of a public drain or sewer in his premises.   The wrong complained of was, following the language of R. S. 1903, chap. 21, § 18, the failure of the defendant to "constantly maintain said drain and keep it in repair so as to afford sufficient and suitable flow for all drainage entitled to pass through it."   The statute provides that "if such town does not so maintain and keep it in repair, any person entitled to drainage through it may have an action against the town for his damages thereby sustained."

Upon trial before a jury a verdict was rendered for the plaintiff and damages assessed at $318.33.

This case is brought before the law court by the defendant on motion for a new trial and on exceptions.

To entitle the plaintiff to a verdict he must have established the following propositions:

1st.   That the drain in question was a public drain or sewer, one legally established by act of the municipal officers of the City of Bangor.   *Estes* v. *China*, 56 Maine, 407; *Darling* v. *Bangor*, 68 Maine, 108; *Bulger* v. *Eden*, 82 Maine, 352, 9 L. R. A. 205.

2nd.   That the plaintiff was a person entitled to drainage through it, not a mere trespasser, but one who had fulfilled the requirements of law which were conditions precedent to the enjoyment of the right of drainage.   Spec. Laws 1887, chap. 242, § 3; *Bulger* v. *Eden*, 82 Maine, 352 supra; *Evans* v. *Portland*, 97 Maine, 509.

3rd.   That the defendant had failed to maintain the sewer or to keep it in repair so as to afford sufficient and suitable flow for all drainage entitled to pass through it.   And on this point, it must be shown that the defect was not in the original system established by the judicial act of the municipal officers, but that there was an actual failure on the part of the city to maintain and keep the drain in repair after its construction.

4th.   That the plaintiff suffered injury from this neglect of the city to properly repair and maintain the sewer.

There seems to be sufficient ground for the jury to have determined the 3rd and 4th of these propositions in favor of the plaintiff, although there is conflicting evidence as to whether the overflowing of the drain was the natural result of a system of drainage faulty in conception and construction, or was due to the subsequent addition of a number of catch-basins not contemplated in the original plan which, as it is claimed, did not intend to provide for the drainage of surface water. It being entirely reasonable for the jury to have concluded from the evidence that the injury was caused by the negligence of the city in the maintenance of the sewer after it had been laid out and constructed, they would naturally come to the further conclusion that the plaintiff had sustained damage in consequence of this negligence.

It seems probable that the jury in considering this branch of the case failed to give due weight to the first two propositions. In respect to the plaintiff's right of drainage through this sewer upon which his claim for damages is necessarily founded, the evidence shows no literal compliance with the terms of the statute or the city ordinances. His permit to enter the sewer was admittedly only verbal; but he claims that by virtue of § 3, chap. 242 of the Spec. Laws of 1887 relating to drains and sewers in the City of Bangor, he had a right to enter the sewer, and that the formality of a written permit was waived, or at least the omission of this formality was cured by subsequent ratification by the city in receiving his assessments, and otherwise acquiescing in his connection with the sewer. The special law relied on as giving the plaintiff greater and different rights from those accorded by the general laws provides as follows: "Any person may enter his private drain into any such public drain or common sewer, while the same is under construction and before the same is completed, and before the assessments are made, on obtaining a permit in writing from the municipal officers, or the sewer board having the construction of the same in charge. . . ." Spec. Laws, 1887, chap. 242, § 3.

Whether this statute placed the plaintiff on the footing claimed by him in respect to his entry of the sewer, or whether there could be a waiver of the written permit required by the law or a subsequent

ratification by the city of the informal or unauthorized acts of its agents under the circumstances indicated, are questions òf serious importance. They were decided in favor of the plaintiff by the jury, and perhaps correctly under the instructions of the court. This need not however be determined under the motion for a new trial, as the subject may more properly be considered, if found necessary, in discussing the exceptions. But a consideration of the remaining point reveals a lack of competent proof which is conclusive of the case.

The special law just referred to, as well as the general statute, deals explicitly with public drains and sewers. These are such as are established and constructed by the direction and in accordance with the formal action of the board of municipal officers. No subsequent ratification or acquiescence of the city can cure a substantial defect, or omission in the acts of this board. As these officers act judicially under authority given them by the state to lay out public drains and sewers, they are in no sense agents of the city; and the city or its agents subsequently in charge of the maintenance and repair of such drains and sewers are not in a legal sense continuing the same work commenced by the municipal officers. Such officers and such city agents are accountable to different authorities and no privity exists between them. It is clear, therefore, that the plaintiff must establish as one of the elements of his right of action, the formal and legal laying out and construction of the Wing Street sewer by the municipal officers of Bangor as a public drain or sewer. This he has failed to do. On July 13, 1899, an order was passed in the board of municipal officers instructing the superintendent of sewers to cause a public sewer to be constructed in Hammond Street from Pier Street westerly to the lot of one Fred L. Thompson. No record appears of the sewer to be constructed in Wing Street, the location of the drain into which the plaintiff subsequently entered. There is evidence tending to show that in constructing the sewer it was found convenient, owing to the ledge in Hammond Street, to divert it from the proposed and authorized location by a circuitous but more practicable way, passing through a portion of Wing Street and by the premises of the plaintiff. There appears no recorded action of the municipal officers authorizing this change. Mayor Beal was allowed

to testify that an order was formally passed by the municipal officers directing the construction of the sewer on Wing Street, but there was no other evidence of formal action by the board relating to the construction of this sewer. It is apparent, therefore, that the jury either relied upon the testimony of the mayor in the absence of the record of the municipal officers, or attached too little importance to the circumstance that the drain was constructed without the necessary action of the only authority competent to make it a public sewer, and their verdict is wrong unless justified by the testimony of Mayor Beal. They were certainly not authorized to find from his testimony facts which, in connection with other evidence introduced by the plaintiff, it had a tendency to disprove. In reply to a question as to the passing of an order by the board of municipal officers in reference to the laying out of a system of sewers described, he says the one on Hammond Street and Wing Street was ordered; but the order introduced in evidence, in reference to which the answer was apparently made, does not include the construction of a sewer on Wing Street, and shows that the witness was probably mistaken. Nor were they justified in finding the jurisdictional fact of which there is no evidence, that a petition for the construction of this sewer had been presented signed as required by statute. Dillon on Municipal Corporations, § 800; Lewis on Eminent Domain, § § 342—62.

The defendant city in its bill of exceptions presents three grounds of objection to the ruling and charge of the presiding justice.

1. Parol evidence in the testimony of Mayor Beal was admitted to prove that authority was given by the municipal officers for the construction of the sewer on Wing Street of which there is no record on the books of the city.

The charge of the presiding justice in reference to this point was very explicit. It was assumed as not in controversy, that there is no public record on the books of the city of the passage of any formal order by the municipal officers authorizing the construction of a sewer on Wing Street; and the attention of the jury was specially called to the testimony of Mayor Beal, and in connection therewith, they were instructed that if they found that the municipal officers did in fact by any vote or order authorize the construction of this sewer,

as stated by him, although not recorded by the city clerk, they would be justified and warranted in reaching the conclusion that the municipal officers authorized its construction. It is true that parol evidence may be received in some cases to supplement a record. *Inhabitants of West Bath, Petitioners* v. *County Commrs.*, 36 Maine, 74; *Smith et al, Petitioners* v. *County Commrs.*, 42 Maine, 395; and to show to what subject the action of a corporation applies, *Baker* v. *Inhabitants of Windham*, 13 Maine, 74. It is also admissible in special proceedings instituted for the purpose, to correct errors in a record, *Willard* v. *Whitney*, 49 Maine, 235; or if the record is destroyed or lost, to prove its purport, *Gore* v. *Elwell*, 22 Maine, 442. But the authorities fairly establish the rule, that judicial acts of such boards as municipal officers or county commissioners, which might result in taking for public use the property of individuals, as in laying out highways, streets and sewers, must be done with due formality and entered of record; that the record by presumption of law shows the full proceedings; and that parol evidence cannot supply, extend or modify the record, and is inadmissible to prove the action of these boards. *Crommett* v. *Pearson*, 18 Maine, 344; *City of Lowell* v. *Wheelock*, 11 Cush. 391; *City of Covington* v. *Ludlow*, 1 Met. (Ky.) 295; *City of Lexington* v. *Headley*, 5 Bush, (Ky.) 508; *City of Delphi* v. *Evans*, 36 Ind. 90, 10 Am. Rep. 12; *Mayhew* v. *District of Gay Head*, 13 Allen, 129; *Morrison, Admx.* v. *City of Lawrence*, 98 Mass. 219; *Jordan* v. *School District No. 3*, 38 Maine, 164; *Moor* v. *Newfield*, 4 Greenl. 44; *Methodist Chapel Corp.* v. *Herrick*, 25 Maine, 354; *Cabot* v. *Britt*, 36 Vt. 349; *Anderson* v. *Commrs. Hamilton Co.*, 12 Ohio St. 635.

2. The jury were instructed that if a vote or order of the municipal officers authorizing the construction of this sewer on Wing Street, as stated by the mayor, although not recorded by the city clerk, became a matter of record by reason of the report of the superintendent of sewers as to the building of the sewer and the assessment of the cost against abutting owners and the adoption of that report by the municipal officers, they would be justified in reaching the conclusion that the municipal officers authorized the construction of the sewer on Wing Street, because a subsequent ratification is equivalent to original authority.

The recorded action of the municipal officers in accepting the report of the superintendent of sewers cannot by implication or presumption prove a judicial act of the municipal officers, nor indirectly ratify acts otherwise unauthorized. Furthermore, there could be no ratification even by direct vote, where in cases like the one under consideration, the proceedings must be in pursuance of the requirements of a statutory enactment. Dillon on Municipal Corporations, § 463. It must therefore be held that the evidence admitted, which alone tended to show that this sewer was legally built, was inadmissible.

This conclusion renders it unnecessary to decide as to the correctness of the third ground of exception to the ruling of the presiding justice, namely: that the requirement of a written permit could be waived, and that the authority of the plaintiff to enter a public sewer might be given by the municipal officers orally.

*Motion sustained.    Exception sustained.*

---

## MEMORANDUM.

The term of Charles Hamlin as Reporter of Decisions expired July 22, 1904, and the remainder of this volume will be completed by his successor.